UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SUBPOENA TO ADOBE SYSTEMS, INC. | Case No. 26-mc-80144-VKD |
| JERRY MITCHELL ADAIR, et al., | |
| Plaintiffs, | **ORDER RE PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA AND TO TRANSFER MOTION TO ISSUING COURT** |
| v. | |
| CIGNA CORPORATE SERVICES, LLC et al., | Re: Dkt. No. 1 |
| Defendants. | |

Jerry Adair, Carla Danielson, Katherin Emrick, Preston Pham, and Eva Recchi ("Plaintiffs") move to compel non-party Adobe Systems, Inc.'s ("Adobe") compliance with a document subpoena served in connection with a putative class action pending in the Eastern District of Pennsylvania, *Adair, et al. v. Cigna Corporate Services, LLC, et al.*, No. 2:25-cv-02384-WB (E.D. Pa.) ("Pennsylvania action"), in which they are named plaintiffs. Dkt. No. 1. In addition, Plaintiffs move to transfer this motion to the Eastern District of Pennsylvania. *Id*. Adobe opposes these motions. Dkt. No. 16. The Court heard oral argument on June 16, 2026. Dkt. No. 21. On June 30, 2026, at the Court's direction, Plaintiffs and Adobe jointly filed a status report regarding their efforts to narrow their dispute regarding the subpoena, and Plaintiffs filed a status report regarding whether the information they seek from Adobe is available from defendants Cigna Corporate Services, LLC and The Cigna Group (collectively, "Cigna") in the Pennsylvania action and whether it had already been requested. *See* Dkt. Nos. 23, 26, 27.

For the reasons explained in this order, the Court grants in part Plaintiffs' motion to compel with respect to RFP 3, and denies the motion without prejudice with respect to RFPs 4 and

5.  The Court also denies Plaintiffs' motion to transfer.

## I.      BACKGROUND

In the Pennsylvania action, Plaintiffs contend that, as insureds of Cigna, they access Cigna's www.cigna.com website and the myCigna portal to manage their healthcare.  Dkt. No. 1 at 8-9.[1]  For several years, Cigna has embedded on the website and the portal "tracking technologies" from third-party vendors, including Adobe.  *Id.*  These tracking technologies captured Plaintiffs' private communications in real time, including keystrokes, search queries, and page URLs, and transmitted Plaintiffs' data and private communications to Adobe and other third-party vendors.  *Id.*

Plaintiffs say they have been seeking discovery from Cigna since June 2025, without much success.  *Id.* at 11.  The presiding judge in the Pennsylvania action has appointed a special master to resolve certain discovery disputes, including a dispute between Plaintiffs and Cigna regarding "the implementation of the online tracking technologies and documents reflecting how website communications were collected, transmitted, and processed."  *Id.*  However, Plaintiffs complain that Cigna is "resisting" complying with discovery the special master has ordered.  *Id.* at 12.

On December 22, 2025, Plaintiffs served a document subpoena on Adobe.  Dkt. No. 1-3. The subpoena includes six requests for production of documents ("RFPs"):

> 1.  Any agreements, contracts, statements of work, terms of service, or other business relationship documents entered into between [Adobe] and Cigna or CCS relating to any service or work performed in connection with the Website[2].
>
> 2.  All communications between [Adobe] and Cigna or CCS or their agents concerning the embedding or deployment of the Tracking Technologies[3] on

---

[1] For filed documents, all pin citations refer to the page number appearing on the ECF document header.

[2] The subpoena defines "Website" as "www.cigna.com and any subpages, subdomains, portals (including the MyCigna portal), mobile versions, or affiliated sites operated by or on behalf of Cigna."  Dkt. No. 1-3.

[3] The subpoena defines "Tracking Technologies" as "any tracking pixels, cookies, JavaScript code, tags, SDKs (software development kits), beacons, web bugs, or other software or code deployed or present on the Website and can be used to view or collect any data, metadata, logs, keystrokes, page views, form inputs, mouse movements, clicks, search terms, or other interactions

the Website.

3.  All documents describing or referring to any of the Tracking Technologies deployed or present on the Website, including the names, descriptions, and technical specifications of each script, pixel, cookie, tag, or other code.

4.  All documents concerning Website Communications[4] intercepted, collected, or otherwise received from any users of the Website.

5.  All documents reflecting data [Adobe] collected or received from the Website.

6.  All documents sufficient to show each party, including Cigna and CCS, to whom [Adobe] sold, transferred, or disclosed data received or collected from the Website.

Dkt. No. 1-3.

On January 16, 2026, Adobe served objections to the subpoena, refusing to produce any responsive documents. Dkt. No. 1-4. Plaintiffs now move to compel Adobe's compliance with the subpoena and to transfer the motion to the Eastern District of Pennsylvania.

## II.     LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties. The scope of discovery available by subpoena under Rule 45 is the same as the scope of discovery available under Rules 26 and 34. *See* Fed. R. Civ. P. 45, advisory committee's note to 1970 amendment (noting that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"). A party may obtain discovery of any non-privileged matter that is relevant to a party's claim or defense in the action, so long as that discovery is also proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). However, Rule 45 also requires "[a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and instructs that "the court for the district where compliance is required must quash or modify a subpoena that

---

by Website users." Dkt. No. 1-3.

[4] The subpoena defines "Website Communications" as "any mouse movements, keystrokes, queries, search terms, URLs visited, or other behavioral or identifying data transmitted by users of the Website." Dkt. No. 1-3.

United States District Court
Northern District of California

. . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1), (3)(A)(iv).  Additionally, Rule 26 provides that the court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).  The party issuing the subpoena must demonstrate that the discovery sought is relevant to a claim or defense in the proceedings.  *See Chevron Corp. v. Donziger*, No. 3:12-mc-80237-CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citation omitted); *see also Optimize Tech. Solutions, LLC v. Staples, Inc.*, No. 5:14-mc-80095-LHK (HRL), 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014).

Rule 45(f) provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a [motion to compel] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).  Rule 45(f) does not describe the circumstances that may qualify as "exceptional," but among the factors courts consider in assessing whether exceptional circumstances exist are (1) the complexity, procedural posture, and duration of the underlying litigation; (2) the nature of the issues pending before, or already resolved by, the issuing court; (3) the need to avoid unnecessary duplication; and (4) whether the issuing court is in a better position to decide the motion based on its familiarity with the issues involved.  *See, e.g., E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, SA MC 15-00022-DOC (DFMx), 2015 WL 12746706, at *3 (C.D. Cal. Oct. 23, 2015) (discussing non-exhaustive list of considerations); *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429-30 (N.D. Cal. 2014) (same); *see also* Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendments ("[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts.").

III.    DISCUSSION

A.    Motion to Compel

Originally, Plaintiffs moved to compel Adobe's compliance with RFPs 1-6 in the subpoena. Dkt. No. 1.  At the motion hearing, Plaintiffs conceded that they had obtained or could obtain documents responsive to RFPs 1 and 2 directly from Cigna in the Pennsylvania action.  *See*

Dkt. No. 25 at 23:8-25:3, 25:22-26:2.  Additionally, in view of the Prunty declaration filed in support of Adobe's opposition (Dkt. No. 16-2) and the parties' joint status report (Dkt. No. 26), the Court understands that Plaintiffs no longer move to compel from Adobe documents responsive to RFP 6.  *See* Dkt. No. 25 at 36:6-38:18; Dkt. No. 26 (Plaintiffs addressing only RFPs 3-5). Accordingly, the Court addresses only RFPs 3-5 of the subpoena.

### 1.      RFP 3

RFP 3 asks for "all documents describing or referring to" the Adobe products Cigna deploys on its website.  Based on the discussion at the motion hearing, the Court understands that Cigna uses or has used two Adobe products—Adobe Analytics and Customer Journey Analytics[5]—that include functionality within the scope of the defined term "Tracking Technologies."  Dkt. No. 25 at 27:13-28:14, 46:16-47:1.  In opposing Plaintiffs' motion to compel, Adobe insists that Cigna is in the best position to describe its own implementation of Adobe products on Cigna's website.  Dkt. No. 16 at 13.  However, Plaintiffs argue that RFP 3 is principally directed to documents describing the operation of *Adobe's* products, rather than Cigna's particular implementation of those products.  Dkt. No. 1 at 18; Dkt. No. 17 at 7.  At the motion hearing, Plaintiffs explained that they have been unable to obtain from Cigna the documentation that details how the Adobe products operate.  Adobe responds that it has produced documents responsive to RFP 3 describing the operation of its products, and that detailed documentation about each of the products is available to customers and the public on the Adobe Experience League web page (*see* https://experienceleague.adobe.com/en/docs, last visited July 9, 2026).  Dkt. No. 16 at 13; Dkt. No. 25 at 40:24-41:19.  Nevertheless, Adobe concedes that it would not be unduly burdensome for Adobe to produce to Plaintiffs the product documentation Adobe typically shares with enterprise customers, like Cigna, who use Adobe Analytics or Customer Journey Analytics.  *See* Dkt. No. 25 at 47:3-16.

The Court concludes that, even if this documentation ought to be obtainable from Cigna, it is Adobe's documentation and can be produced by Adobe with minimal burden.  Accordingly, if it

---

[5] According to Adobe, the Customer Journey Analytics product operates on the Adobe Experience Platform, but the Experience Platform is not a separate product.  Dkt. No. 25 at 46:16-47:1.

United States District Court
Northern District of California

United States District Court
Northern District of California

has not done so already, Adobe must produce to Plaintiffs the product documentation it typically shares with customers for Adobe Analytics and Customer Journey Analytics.

### 2.    RFPs 4 and 5

RFP 4 asks for "all documents concerning" the user interactions (i.e. "Website Communications") "intercepted, collected, or otherwise received" from any users of the Cigna website.  RFP 5 asks for "all documents reflecting" data Adobe "collected or received" from Cigna's website.  In their motion to compel, Plaintiffs seem to suggest that RFPs 4 and 5 ask for essentially the same discovery: the information and data Adobe received from users of Cigna's website.  *See* Dkt. No. 1 at 14-15; Dkt. No. 17 at 7.

Adobe objects to these RFPs on several grounds.  First, Adobe argues that Plaintiffs mistake the nature of its relationship with Cigna.  According to Adobe,[6] it provides software products and services to enterprise customers, like Cigna, to help them "collect and analyze data from their own websites to better understand how their websites are being used to improve their visitors' experiences."  Dkt. No. 16 at 7.  Adobe emphasizes that *Cigna* configures the Adobe products it uses according to Cigna's own business needs, and that *Cigna* determines what information to collect.  *Id.*  Adobe insists that its products do not collect any additional or different information beyond what Cigna elects to collect, and that Cigna maintains ownership and control at all times of the information Adobe stores on its behalf.  *Id.*

Second, Adobe asserts that "Cigna is able to export the data collected from its website stored on Adobe servers at any time," and thus, all of the information responsive to RFPs 4 and 5 can be obtained directly from Cigna.  *Id.*  Adobe says that it has produced to Plaintiffs the "step-by-step instructions" that Adobe provides to its customers, including Cigna, explaining how to export the customer's data, and that Cigna could follow these same instructions and export the very data Plaintiffs' request.  *Id.* at 14; *see* Dkt. No. 25 at 52:10-53:5.

Third, Adobe objects that, as drafted, RFPs 4 and 5 are unduly burdensome, as they would require Adobe to "review voluminous documents and emails for relevance, and export to hard

---

[6] Adobe relies on the Prunty declaration in support of these assertions.

drives and manually transfer Cigna's data for production." Dkt. No. 16 at 16.

Regarding Adobe's first objection, Plaintiffs insist that Cigna cannot possibly know what *Adobe* has collected. Dkt. No. 1 at 14-15; Dkt. No. 17 at 11-12. Plaintiffs' assumption appears to be that the information or data Adobe received or collected from Cigna's website is independent of (or at least possibly different from) the information or data Cigna configured the Adobe products to collect, and/or independent of (or different from) the information or data stored on Adobe's servers that Cigna can directly access and export. Plaintiffs' current proposal—i.e. Adobe should "collect and produce a representative sample of the actual data transmitted to Adobe by its trackers on the Cigna website" (Dkt. No. 26 at 2)—suggests that Plaintiffs believe Adobe tracks and collects user data for its own purposes. Plaintiffs offer no support for this assumption, nor do they provide any information contradicting the assertions in the Prunty declaration. Thus, in view of the data apparently available directly from Cigna, it remains unclear why the discovery Plaintiffs seek from Adobe is relevant to any claim or defense in the Pennsylvania action.

Regarding Adobe's second objection, Plaintiffs principally argue that they have been unsuccessful in obtaining the information they require from Cigna. *See* Dkt. No. 1 at 11-12. However, they acknowledge that in the Pennsylvania action Cigna has agreed to produce the computer code Cigna received from Adobe and embedded in Cigna's website,[7] and that Cigna will also produce its own source code. *See* Dkt. No. 1 at 9, 12; Dkt. No. 27 at 3; Dkt. No. 27-2 at 1. That code production is expected to show Cigna's implementation of the Adobe products, including how Cigna configures the Adobe products to collect data from Cigna's website.

Regarding Adobe's third objection, Plaintiffs do not attempt to justify the very broad scope of RFPs 4 and 5. Rather, they argue that Adobe has not adequately supported its claim of undue burden and indicated that they are willing to accept samples of data in lieu of "all documents". Dkt. No. 17 at 15-16; Dkt. No. 25 at 34:11-20.

The fact that Cigna has produced or will produce source code in the Pennsylvania action is

---

[7] At the hearing, Adobe's counsel represented that Adobe provides its customers, like Cigna, with a software development kit ("SDK") that enables the customer to implement Adobe's technology on the customer's website. Dkt. No. 25 at 42:2-10.

a significant development that occurred in parallel with the briefing and argument on this motion to compel, and the Court understands that Plaintiffs and their expert have not yet reviewed this code. If, as expected, Cigna's code production reveals what information Cigna collected from users' interactions on its website and where it sent that information, the Court is reluctant to order Adobe, a non-party software and service provider, to also undertake the burden of producing all (or a sample) of its customer's data. The Court recognizes that source code review and analysis may be more cumbersome than review and analysis of an organized export of data. However, before filing their motion to compel, Plaintiffs appear not to have asked Cigna specifically to export the data that it apparently has the ability to access and export.[8] *See* Dkt. No. 27; Dkt. No. 27-2. It is not clear why Plaintiffs did not make this specific request of Cigna, or if they have made such request, why they did not seek relief from the special master in the Pennsylvania action to compel Cigna's production of this data when Cigna failed to produce it.

At the motion hearing, Plaintiffs emphasized their belief that their wiretap claims in the Pennsylvania action require them to prove contemporaneous interception by Adobe of users' communications with the Cigna website, and that this requires obtaining timestamps and metadata directly from Adobe. Dkt. No. 25 at 34:21-36:5. The Court expresses no opinion regarding the accuracy of Plaintiffs' view of what is required but simply observes that RFPs 4 and 5 do not clearly call for timestamps or metadata and are by no means limited to that kind of evidence. While it may be that this information is relevant, the record before the Court indicates that Plaintiffs have not examined Cigna's code production to determine whether it shows contemporaneous transmission to Adobe and have not otherwise attempted to obtain this information from Cigna.

Accordingly, on the record presented, the Court denies Plaintiffs' motion to compel Adobe to produce documents responsive to RFPs 4 and 5, without prejudice. It is Plaintiffs' burden to describe the documents they require with "reasonable particularity," and to avoid requesting discovery that "can be obtained from some other source that is more convenient, less burdensome,

---

[8] Plaintiffs contend that this information is within the scope of its RFP 8 to Cigna. Dkt. No. 27 at 2. Cigna apparently disagrees. *See* Dkt. No. 27-2 at 1.

United States District Court
Northern District of California

United States District Court
Northern District of California

or less expensive," such as a party to the litigation.  Fed. R. Civ. P. 26(b)(2)(C)(i), 34(b)(1)(A).  Courts in this Circuit have long taken care to protect non-parties from bearing the burden of discovery properly borne by parties to a litigation. *See United States v. C.B.S., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").  RFPs 4 and 5 are very broad.  While the Court appreciates that the parties have discussed options for a narrower production of documents responsive to RFPs 4 and 5, they have not reached agreement on such narrower production, and the Court will not rewrite these requests on its own.  However, depending on the results of party discovery in the Pennsylvania action, Plaintiffs may yet require some, limited discovery from Adobe.

### B.    Motion to Transfer

The Court denies Plaintiffs' motion to transfer and resolves their motion to compel on the merits, as Plaintiffs failed to demonstrate that the motion presented any issues that were already pending before or previously resolved by the Pennsylvania court, or that transfer would avoid unnecessary duplication of effort.  However, the status reports submitted after the motion hearing suggest that this may change, as Plaintiffs and Cigna appear to disagree about the nature and scope of discovery Plaintiffs have requested from Cigna and whether Cigna has produced what it is required to produce.

Thus, if the Court has occasion to consider a further motion regarding disputed discovery from Adobe, the Pennsylvania court may well be better positioned to resolve the merits of such motion, particularly if the issues overlap with those involved in the still-active disputes between Plaintiffs and Cigna.  *See Bright House Networks, LLC v. MarkMonitor, Inc.*, No. 20-mc-80083-TSH, 2020 WL 4464882, at *2 (N.D. Cal. Aug. 3, 2020) ("Numerous district courts have found exceptional circumstances when motion practice in the issuing court raises similar arguments to those raised in the motion sought to be transferred.") (quotation modified).

9

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part Plaintiffs' motion to compel with respect to RFP 3, and denies the motion without prejudice with respect to RFPs 4 and 5. The Court also denies Plaintiffs' motion to transfer.

**IT IS SO ORDERED.**

Dated: July 13, 2026



Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California

10